**Elizabeth G. Daily**
**Assistant Federal Public Defender**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**(503) 326-2123 Telephone**
**(503) 326-5524 Facsimile**
**liz_daily@fd.org**

**Attorney for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case Nos.  1:09-cr-30014-PA** |
| **Plaintiff,** | **1:09-cr-30056-PA** |
| **v.** | **MOTION TO REDUCE SENTENCE PURSUANT TO** |
| **ALAN DAVID HURWITZ,** | **18 U.S.C. § 3582(c)(1)(A)(i)** |
| | **(COMPASSIONATE RELEASE)** |
| **Defendant.** | |

**Introduction**

The defendant, Alan David Hurwitz, through his attorney, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to time served. As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. Mr. Hurwitz is a 79-year-old man with multiple chronic, serious physical ailments that render him especially vulnerable to the new coronavirus disease, COVID-19. He is housed at the low security federal correctional institution in Butner, North Carolina, where a dangerous outbreak of the disease has taken hold. Having served the bulk of his

210-month sentence, the grave risk of harm Mr. Hurwitz faces from the coronavirus pandemic provides an extraordinary and compelling basis to order his release from imprisonment and impose a term of home confinement in lieu of incarceration.

**Statutory Framework for Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A)(i)**

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

(1) in any case--

(A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--**

(i) **extraordinary and compelling reasons warrant such a reduction**;

\*\*\*\*\*

**and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission**[.]

18 U.S.C. § 3582(c)(1)(A). Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

**Relevant Facts and Procedural History**

On November 9, 2009, Mr. Hurwitz pleaded guilty in two dockets to three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of unarmed bank robbery under 18 U.S.C. § 2113(a). For those offenses, Mr. Hurwitz faced an advisory Sentencing Guidelines range of 92 to 115 months at offense level 26 and criminal history category IV. PSR ¶¶ 51, 62. However, because he had two prior federal convictions for armed bank robberies, the Court found Mr. Hurwitz was subject to enhanced punishment as a career offender. The prior offenses all occurred during the course of a seven-week spree in 1992, without an intervening arrest, but they qualified as two separate prior convictions for career offender purposes because they were charged in separate charging instruments and there were two sentencing proceedings. PSR ¶¶ 56-60; *see* U.S.S.G. §§ 4A1.2(a) (convictions for offenses that were not separated by an intervening arrest count separately unless they were charged together or sentenced on the same day). The career offender enhancement increased the Guidelines range to 188 to 235 months. On January 19, 2010, this Court sentenced Mr. Hurwitz to concurrent terms of 210 months' imprisonment.

Mr. Hurwitz has been in continuous federal custody since January 8, 2009, a period of approximately 135 months, the equivalent of a 158-month federal sentence counting all earned good conduct time credit. His projected release date is December 6, 2023.

As reflected in the presentence report, Mr. Hurwitz is 79 years old and suffers from a number of chronic, age-related health conditions, including heart disease, high blood pressure, emphysema (a type of chronic obstructive pulmonary disease), and edema in his ankles and feet. PSR ¶¶ 79-83. His hypertension has been a continuing and serious condition since at least 1998

when he suffered a life-threatening heart attack and received an angioplasty to unblock his arteries.

PSR ¶ 79. He takes prescribed medication for high blood pressure. PSR ¶ 82a. Prior to the time of

sentencing, he was experiencing intermittent chest pain and had shortness of breath with a small

amount of exertion. PSR ¶ 82a. Mr. Hurwitz also has a history of prostate cancer that was treated

in late 2007. Although Mr. Hurwitz has not been able to obtain his BOP medical records in the

present crisis, he reports additional diagnoses of lung cancer, throat cancer, nasal cancer, and

diabetes. His family and friends confirm that he has suffered multiple heart attacks while in custody

and has survived three forms of cancer. He uses a wheelchair for mobility and has an assigned

"inmate companion" to assist him. The BOP has assigned Mr. Hurwitz to "Care Level 3," for the

last ten years. Ex. A at 2 (Program Review). Care Level 3 is the second highest of the BOP's four

care levels, defined as follows:

> • Care Level 3 inmates are outpatients who have complex, and usually chronic,
> medical or mental health conditions and who require frequent clinical contacts to
> maintain control or stability of their condition, or to prevent hospitalization or
> complications.

> • They may require assistance with some activities of daily living (ADLs) that can
> be accomplished by inmate companions. Stabilization of medical or mental health
> conditions may require periodic hospitalization. He does not have a work
> assignment due to being "medically unassigned."

BOP, *Care Level Classification For Medical And Mental Health Conditions Or Disabilities* at 3

(May 2019).

On April 2, 2020, Federal Public Defender Lisa Hay emailed a letter to the Warden of FCI

Butner requesting that Mr. Hurwitz be considered for compassionate release. Ex. B (FPD Letter to

FCI Butner). Mr. Hurwitz followed up with his own request to the warden for compassionate

release consideration on April 8, 2020. Mr. Hurwitz received a denial of his request from the warden today.

Over the course of his present 11-year period of incarceration, Mr. Hurwitz reports that he has had no disciplinary write-ups, and his sentence computation data confirm that he has earned all available good conduct time credit. Ex. C at 2 (Sentence Computation). Mr. Hurwitz has a unique background in that his first criminal conduct (the spree of bank robberies in 1992) occurred at age 51 following the onset of an addiction to crack cocaine late in life. PSR ¶¶ 56-60, 89. Before that, Mr. Hurwitz had an "exceptional career" as an educator and an activist. PSR ¶¶ 93-94.  He has used those skills in custody to teach adult continuing education classes in American History and the History of the Civil Rights Movement to other inmates. Ex. A at 1-2. Mr. Hurwitz makes monthly payments of $150 toward his restitution obligation. Ex. A at 2. According to his most recent custody classification form, Mr. Hurwitz is scored at "low" because of the amount of the sentence that he has served and his good institutional adjustment. Ex. D (Male Custody Classification Form).

When Mr. Hurwitz is released, he will have a home to go to and a supportive family around him, including his three children, his six grandchildren, and his two great grandchildren. He plans to live with his daughter Laura at her home in Orleans, California. Letters of support are attached as Exhibits E through I.

**Argument**

**A.    The Court Has Authority To Consider Mr. Hurwitz's Compassionate Release Motion Following The Denial By The Warden.**

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in the

First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

The reason for the expansion to include defense-filed motions was the "documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts." *Id.* (emphasis in original).

In this case, the Court has authority to consider Mr. Hurwitz's motion now because he has already presented it to the warden of his institution and the request has been denied. And in any event, 30 days will have passed on May 2, 2020, two days from now. *See United States v. Spears*, No. 3:98-CR-0208-SI-22, 2019 WL 5190877, at *2 (D. Or. Oct. 15, 2019) (granting the defendant's compassionate release motion on the first business day after the 30-day period expired); *United States v. Robinson*, No. 16-CR-5307 BHS-5, 2019 WL 2567356, at *2 (W.D. Wash. June 21, 2019) (staying consideration of a compassionate release motion for exactly the 30-day period).

**B.     Mr. Hurwitz's Age And Fragile Health, Together With His Vulnerability To COVID-19, Establish Extraordinary And Compelling Reasons For An Immediate Sentence Reduction To Time Served.**

The compassionate release statute does not expressly define or limit what constitutes an "extraordinary and compelling" reason for a sentence reduction. Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," BLACK'S LAW DICTIONARY (11th ed. 2019). Its definition of "compelling need," is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]." *Id.*

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority, U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). The court is not constrained by those categories, however, because the commentary also includes a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 comment n.1(D). The catch-all provision provides courts authority to define other bases for sentence reduction. *United States v. Joling*, 2020 WL 1903280, at *3 (D. Or. Apr. 17, 2020) (citing U.S.S.G. § 1B1.13, comment. n.1(D)); *see also United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *7 (E.D. Penn. Apr. 1, 2020) ("[A] majority of district courts have concluded that the 'old policy statement provides

helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." (citation omitted)).

The present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes, particularly in light of the outbreak of the disease at the prison where Mr. Hurwitz is housed and Mr. Hurwitz's vulnerability to the disease. The grave risk to Mr. Hurwitz from continued incarceration provides a compelling reason for his immediate release to home confinement according to his release plan.

In the past months, coronavirus has spread like wildfire, infecting more than three million people worldwide, leading to over 200,000 deaths. *Coronavirus COVID-19 Global Cases*, CENTER FOR SYSTEMS SCIENCE AND ENGINEERING (CSSE) AT JOHNS HOPKINS UNIVERSITY, https://coronavirus.jhu.edu/map.html (last visited April 29, 2020, at 11:56 a.m.).  Over the span of less than three months, the disease has killed more Americans than the decades-long Vietnam War. David Welna, *Coronavirus Has Now Killed More Americans Than Vietnam War Black Americans* NPR (Apr. 29, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/04/28/846701304/pandemic-death-toll-in-u-s-now-exceeds-vietnam-wars-u-s-fatalities. According to the Centers for Disease Control and Prevention (CDC), that toll is likely to continue to rise in the coming weeks, although "strong contact reduction" can slow the rate. CDC, *COVID-19 Forecasts* (Apr. 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/forecasting-us.html.

COVID-19 has made frightening inroads into the BOP, despite the agency's efforts to prevent an outbreak. *See* Walter Pavlo, *Federal Bureau Of Prisons Institutions Not Showing Any*

*Signs Of "Flattening Curve"* (Apr. 15, 2020) https://www.forbes.com/sites/walterpavlo/2020/04/15/federal-bureau-of-prisons-institutions-not-showing-any-signs-of-flattening-curve/#67533f8c54dd (noting that, at Phase 6 of its pandemic response plan, the BOP has not been able to "flatten the curve" within federal prisons). Yesterday's reported numbers show 1,692 federal inmates and 349 staff with active COVID-19 infections. BOP, *Open COVID-19 Tested Positive Cases*, www.bop.gov/coronavirus/ (providing daily tallies of confirmed infections and recovered inmates) (last visited Apr. 30, 2020, at 3:36 p.m.). An additional 426 inmates and 132 staff have recovered from the virus. *Id.* Thirty-three inmates have died. *Id.* The rate of infection in the federal prison (one percent of the inmate population), far exceeds the rate in the general population.



*See* https://federaldefendersny.org/ (last accessed Apr. 30, 2020, at 3:39 p.m.).

The Butner Federal Correctional Complex, where Mr. Hurwitz is housed, has been hit especially hard. The low security facility where he is located has 27 reported inmate infections, and the medium security facility next door has 207 inmate infections, with six reported deaths.

BOP, *Open COVID-19 Tested Positive Cases*, www.bop.gov/coronavirus/ (last visited Apr. 30, 2020, at 3:39 p.m.).

      Mr. Hurwitz's age and medical conditions make him especially vulnerable to severe illness or death from COVID-19 if he is infected. CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. A late March study in the International Journal of Cardiology found that "patients with underlying cardiovascular comorbidities, such as hypertension and coronary artery disease, are more likely to suffer from a severe COVID-19 infection that requires ICU care, have complications like [Acute Respiratory Distress Syndrome], which in turn may result in death." Weiyi Tan & Jamil Aboulhosn, *The Cardiovascular Burden of Coronavirus Disease 2019 (Covid-19) with a Focus on Congenital Heart Disease*, 309 Int'l J. Cardiology 70–77 (Mar. 28, 2020). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7102656/.



An observational study of 5,700 hospitalized COVID-19 patients in New York confirmed the worrisome correlation, finding that hypertension was the "most common comorbidit[y]," present in 56.6 percent of the hospitalized patients. Safiya Richardson, et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area*, JAMA (Apr. 22, 2020).[1] Moreover, at 79 years old, Mr. Hurwitz's age alone is a significant risk factor. In the New York study, the fatality rate for men age 70 to 79 was 35.8 percent, and it was 60.6 percent for men age 80 and above.

Although Mr. Hurwitz could be exposed to coronavirus in society at large even if he is released from prison, his risk of exposure is significantly higher so long as he remains in custody. *See United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (recognizing that "not only is [the defendant] at a higher risk of serious illness if he contracts COVID-19 due to his underlying health conditions, but he is also at a higher risk of contracting COVID-19 due to his incarceration"). As a Bureau of Prisons inmate, it is impossible for Mr. Hurwitz to follow the CDC's recommendations to protect himself from exposure to this highly-transmissible disease by keeping separation between himself and others and avoiding high touch surfaces. Custodial living conditions foster the spread of contagious diseases. In fact, BOP's recent move to greater testing has revealed that the virus is widespread in its facilities. Michael Balsamo, *Over 70% Of Tested Inmates In Federal Prisons Have COVID-19*, AP News (Apr. 29, 2020), https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f.  Out of 2,700 tests administered

---

[1] Available at https://jamanetwork.com/journals/jama/fullarticle/ 2765184?utm_campaign=articlePDF%26utm_medium%3darticlePDFlink%26utm_source%3dar ticlePDF%26utm_content%3djama.2020.6775

system-wide, nearly 2,000 came back positive. *Id.* Mr. Hurwitz's risk of exposure to COVID-19 at FCI Butner is high and beyond his control. If he is released and allowed to shelter in place at his daughter's home, he can take measures to protect himself.

Based on all of the circumstances, Mr. Hurwitz satisfies the expressly listed extraordinary and compelling reasons criteria in Application Note 1(A)(ii), which applies when a defendant has a serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, comment. n.1(A)(ii)(I). The government in this district has conceded that, "if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons'" in note 1(A)(ii)(I). Gov't Resp., *United States v. Moore*, No. 3:16-cr-00171-JO (CR 82 at 17). This Court agreed with that position in *United States v. Joling*, holding that, due to the defendant's age and poor health, he was "suffering from a serious medical condition which significantly diminishes his ability to provide self-care in the environment of FCI Butner." No. 6:11-CR-60131-AA, 2020 WL 1903280, at *5 (D. Or. Apr. 17, 2020); *see also United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding that the defendant, who was vulnerable to coronavirus due to diabetes, was "unable to practice effective social distancing and hygiene to minimize her risk of exposure" while in custody). Mr. Hurwitz's serious diseases that render him vulnerable to coronavirus, combined with his uncontrolled risk of exposure at FCI Butner where there has been an ongoing outbreak of the disease, qualifies him for compassionate release.

Mr. Hurwitz also meets the expressly listed extraordinary and compelling reasons criteria in Application Note 1(B), which applies when a defendant is at least 65 years old, has served more than 10 years of his sentence, and "is experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13, comment. n.1(B). Mr. Hurwitz is 79 years old, he has served 11 years in custody, and his health is seriously deteriorating as he ages.

District courts around the country have granted compassionate release for similarly situated prisoners who are particularly vulnerable to COVID-19. *See Miller v. United States*, No. 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (concluding that "the persuasive precedent for granting compassionate release under the current circumstances," where the defendant suffered from hypertension and other diagnoses, "is overwhelming"); *see also, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM-CWH-1, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release based on the defendant's asthma and inability to provide self-care in the institution); *United States v. Scparta*, No. 1:18-cr-00578-AJN-1, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to a defendant with hypertension, among other medical conditions); *United States v. Samy*, No. CR 16-20610-1, 2020 WL 1888842, at *4 (E.D. Mich. Apr. 16, 2020) (finding that a 72-year old defendant with hypertension and diabetes, among other diagnoses, "squarely fits the definition of an individual who has a higher risk of dying or falling severely ill from COVID-19" and granting release); *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (agreeing that "the COVID-19 pandemic, combined with [the defendant's] particular vulnerability to complications from COVID-19 because of his hypertension, constitutes an "extraordinary and compelling reason" for his release); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr.

13, 2020) (finding that a defendant's medical conditions, including diabetes, "place him at a high risk of hospitalization requiring intensive care unit admission should he contract COVID-19," and therefore constitute extraordinary and compelling circumstances warranting release); *United States v. Dillard*, No. 1:15-cr-170-SAB (D. Idaho Apr. 27, 2020) (CR 71).

The dire circumstances regarding the COVID-19 outbreak at FCI Butner, combined with Mr. Hurwitz's extreme vulnerability to the virus due to his age and health, demonstrate extraordinary and compelling circumstances to grant a sentence reduction.

**C.    With Full Consideration Of The § 3553(a) Factors, The Court Should Order Mr. Hurwitz Released From Incarceration.**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). The Court can, and indeed must, consider post-offense developments under § 3553(a). *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). Here, the relevant § 3553(a) factors are met by a sentence reduction to time served and imposition of a period of home confinement as a condition of supervised release.

The overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to individuals like Mr. Hurwitz. The Court could not have anticipated at the time of sentencing that Mr. Hurwitz's sentence would expose him to a virus that, in light of his underlying health condition, could very well be life-threatening. As the court in *Zukerman* framed it, the sentence was not intended to "'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." 2020 WL 1659880, at \*6. Based on these new circumstances, permitting Mr. Hurwitz to be released from FCI Butner and instead serve a period of home confinement as a condition of supervised release while living

**Page 14 MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)**

at his daughter's home satisfies the purposes of punishment under § 3553(a). With a term of home confinement, Mr. Hurwitz's liberty remains restricted, but he is better able to protect himself from exposure to COVID-19.[2]

The reduced term of incarceration is consistent with the Sentencing Guidelines. Having been in custody for approximately 135 months in total, Mr. Hurwitz has served the sentence equivalent of 158 months' imprisonment. That sentence falls just below the career offender range (188-235 months), but well above the non-career offender range (92-115 months). It represents a "sufficient, but not greater than necessary," sentence in this case in light of the fact that Mr. Hurwitz barely qualified for treatment as a career offender based on the prosecutorial decision in his first series of bank robberies to split the charges into two sentencing proceedings. Had those offenses been sentenced together, there would have been only a single prior conviction.

Mr. Hurwitz's release will not present any risk to the safety of the community. Leading up to the present offenses, Mr. Hurwitz had already served a lengthy period of incarceration and was successful on supervision, leading to his early termination of supervision. Although he eventually relapsed and ended up committing the present series of bank robberies, Mr. Hurwitz is now at low risk to reoffend. His deteriorating health makes him unlikely to relapse with crack cocaine again, and being confined to a wheelchair negates any capacity to commit violent crime. Mr. Hurwitz has shown during his current term of incarceration, both through his own good conduct and his efforts

---

[2] In addition to § 3553(a), the Eighth Amendment plays a role because if its prohibition on cruel and unusual punishment, including unreasonable exposure to dangerous conditions in custody. *See Helling v. McKinney*, 509 U.S. 25, 28 (1993); *see also Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to "contagious diseases caused by overcrowding conditions").

**Page 15 MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)**

to teach other inmates, that his rehabilitation is sincere and that he has both the willingness and ability to comply with conditions of supervision, including home confinement.

Significantly, Mr. Hurwitz's strong family support as reflected in the attached letters, is a predictor of success on supervision. In her letter, his daughter Laura, who followed in her father's footsteps to become an educator, describes Mr. Hurwitz as "a good man with a heart of gold." Ex. E. She considers him to have passed on to his children a strong moral compass: "He raised his children to be caring responsible citizens and to work on behalf of all people, especially those who are disadvantaged." Ex. E. His other daughter, Karen, also believes that Mr. Hurwitz fostered her sense of social justice: "His lifetime commitment to addressing racism, sexism and inequality in our society is unparalleled and shaped who I have become as an adult." Ex. F. His longtime friend echoes that sentiment, "Mr. Hurwitz has consistently demonstrated a concern for young people and their opportunity for quality education experiences." Ex. G. Even his granddaughter, Sequoia, has benefited from the wisdom that he has passed on to her, "in part due to learning from his own mistakes of his past." Ex. H.

All of Mr. Hurwitz's children are extremely concerned for his health at FCI Butner through the present crisis, and they are committed to providing him a safe home upon release. As his daughter Karen summarized:

> I do not want my dad to die alone in prison, never having laid eyes on his great grandchildren, far removed from all of us who love him. He is confined to a wheelchair and poses no risk to the public whatsoever. He has three loving children who want to provide and care for him in his remaining years, as well as 6 grandchildren and two great grandchildren. Please allow my father to come home to us under compassionate release. He has a safe place to coalesce and live out his remaining time on this earth, surrounded by the family and friends that love and miss him.

Ex. F.

**Conclusion**

 For the foregoing reasons, Mr. Hurwitz respectfully requests that the Court grant reduction in sentence to time served and amend the conditions of supervised release to include a period of home confinement.

 Respectfully submitted this 30th day of April, 2020.

         */s/ Elizabeth G. Daily*
         Elizabeth G. Daily
         Attorney for Defendant